WILLIAM B. SHAW,

        Plaintiff,

v.

                                        Case No. 20-cv-1005-bhl

KILOLO KIJAKAZI,[1] Commissioner of
Social Security Administration,

        Defendant.

## ORDER AND DECISION

Plaintiff William B. Shaw seeks the reversal and remand of an administrative law judge decision denying his claim for disability insurance benefits under the Social Security Act. For the reasons set forth below, the decision is affirmed.

## PROCEDURAL BACKGROUND

Shaw applied for disability insurance benefits on January 30, 2017, alleging disability beginning May 1, 2007. (ECF No. 11-4 at 5.) The claim was denied initially and upon reconsideration. (*Id.*) Shaw requested a hearing before an administrative law judge (ALJ) and a hearing was held on June 24, 2019. (ECF No. 11-21 at 2.) At the hearing, Shaw was represented by counsel and the ALJ heard testimony from a vocational expert. (*Id.*) The ALJ issued an unfavorable decision on August 13, 2019, finding Shaw "not disabled." (ECF No. 11-4 at 20.) On May 11, 2020, the Appeals Council denied review. (ECF No. 11-3 at 2.) Shaw filed this action on July 6, 2020. (ECF No. 1.)

Shaw had previously been receiving disability benefits, but those benefits stopped in May 2016, when the agency determined Shaw had medically improved. (ECF No. 11-21 at 26-27.) Shaw did not appeal that decision, choosing instead to file a new application for benefits, and it is

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for former Commission Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

the denial of this new application that is at issue in this appeal. (ECF No. 11-4 at 5.) Given this procedural history the period in question for this appeal spans back no earlier than May 16, 2016—the date Shaw's prior benefits ceased. (*Id.*)

## FACTUAL BACKGROUND

At the time of the hearing, Shaw was fifty years old, married, and working thirty-five hours a week as a paid home health aide for his wife. (ECF No. 11-21 at 9, 11.) Shaw testified that he had previously been receiving disability benefits for about nine years largely due to his mental health, and when those benefits ceased, he did not appeal that decision. (*Id.* at 20.) With respect to his employment history, Shaw testified that he had worked during 2016, 2017, 2018, and 2019. (ECF No. 11-4 at 8.) The ALJ noted that Shaw's wage information for part of 2019 demonstrated that he was averaging over $1,300 every month. (*Id.*) The ALJ, however, withheld any ruling as to whether Shaw had been engaged in substantial gainful activity and performed the full 5-Step analysis. (*Id.*)

Shaw contends he is primarily unable to work due to his mental conditions. The ALJ found Shaw's schizoaffective disorder; attention deficit hyperactivity disorder; and mild bilateral thumb degenerative joint disease all constituted severe impairments. (*Id.*) The ALJ concluded Shaw was not disabled, however, because his residual functional capacity (RFC) left him capable of performing his past relevant work as well as other jobs existing in the national economy. (*Id.* at 18-19.) Shaw challenges that conclusion in this appeal.

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citation omitted). That said, an ALJ is not permitted to simply ignore contradictory evidence. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

Shaw argues he is entitled to a remand because the ALJ erred in his evaluation of the medical opinion evidence. Because substantial evidence supports the ALJ's assessment of the medical opinion evidence, the ALJ's decision will be affirmed.

**I.     The ALJ Properly Assessed the Medical Opinion Evidence and Crafted a Residual Functional Capacity that was Supported by Substantial Evidence.**

The ALJ found that Shaw has the RFC to perform a full range of work at all exertional levels but with certain limitations. (ECF No. 11-4 at 10.) The ALJ limited Shaw to only frequent handling and fingering bilaterally; to understanding, carrying out, and remembering no more than simple instructions; employment in a low-stress job, defined as having only occasional decision-making required and only occasional changes in the work setting; no production rate or pace work; and only occasional interaction with co-workers and supervisors, and no interaction with the public. (*Id.*)

In fashioning the RFC, the ALJ relied on medical evidence demonstrating that although Shaw "presented as mildly depressed and moderately anxious, he also had good alertness, appropriate dress and psychomotor status, with good eye contact, appropriate speech, good attention and concentration, good insight and intact judgment." (*Id.* at 13 (citing ECF 11-10 at 88.)) The ALJ discussed treatment notes that reflected Shaw was well-oriented, with adequate memory and appropriate mood and affect. (*Id.* (citing ECF No. 11-18 at 43.)) In 2018, Shaw made no complaints of any significant mental limitations. (*Id.* (citing ECF No. 11-18 at 30-44.)) In January 2019, Shaw reported that his anxiety symptoms were stable; denied panic, agoraphobia, and social phobia; indicated that his medication was effective without side effects, and stated that he had no current symptoms. (ECF No. 11-18 at 30.) In 2019, Shaw's mental condition was stable overall. (ECF 11-4 at 13 (citing ECF No. 11-18 at 11); *see* ECF No. 18 at 4 (compiling the ALJ's citations to examinations showing benign results.)) The ALJ reasonably concluded that Shaw had "maintained significant mental functional capacity during the period in consideration." (ECF No. 11-4 at 13.)

**II. Contrary to Shaw's Suggestions, The ALJ Did Not Err in Weighing the Medical Opinions in the Record.**

Shaw argues that the ALJ erred in assessing the relevant medical opinions, necessitating a remand. (ECF No. 14 at 10.) Because the record confirms the ALJ properly weighed the evidence, his decision will be affirmed.

### A. The ALJ Gave Reasonable Weight to the Opinions of the State Agency Psychologists.

The ALJ gave the greatest weight to two state agency mental health professionals, Esther Lefevre, Ph.D. and Russell Phillips, Ph.D. (ECF No. 11-4 at 14-15.) The record shows that Dr. Lefevre completed a Psychiatric Review Technique (PRT) and rated Shaw as having moderate limitations: in understanding, remembering, or applying information; interacting with others; and concentrating, persisting or maintaining pace; and mild limitations in adapting or managing himself. (ECF No. 11-5 at 10.) Dr. Lefevre also completed a Mental Residual Functional Capacity Assessment (MRFCA), which included her opinion that while Shaw had no limitations in understanding and memory, he had limitations in sustained concentration and persistence. (*Id.* at 15.) Assessing Shaw's sustained concentration and persistence limitations, Dr. Lefevre explained that Shaw had moderate limitations: in carrying out detailed instructions; maintaining attention and concentration for extended periods; working in coordination with or in proximity to others without being distracted by them; and completing a normal workday and workweek without interruptions from psychologically based symptoms. (*Id.* at 15-16.) Dr. Lefevre rated Shaw as not significantly limited in his ability to carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and sustain an ordinary routine without special supervision. (*Id.* at 15.) Dr. Lefevre also rated Shaw as not significantly limited in most areas of social interaction and adaptation but found Shaw moderately limited in his ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors and respond appropriately to changes in the workplace. (*Id.* at 16.) In the narrative portions of the form, Dr. Lefevre stated Shaw "likely" had moderate limitations applying detailed information, working near others, maintaining pace and concentration, interacting with others, and responding to stress/change. (*Id.*) Dr. Lefevre ultimately concluded that Shaw was "capable of routine, unskilled work." (*Id.* at 17.)

Although the ALJ gave significant weight Dr. Lefevre's opinion, the ALJ did not blindly adopt her views. Rather, the ALJ rejected Dr. Lefevre's opinion that Shaw had a moderate limitation in understanding, remembering, or applying information as not being supported by the record. (ECF No. 11-4 at 14.) The ALJ noted that although Shaw had difficulty remembering instructions and needed them repeated, he had sufficient capacity for understanding and remembering in performing daily living activities such as driving a car, performing personal hygiene, performing house and yard work, preparing simple meals, handling money matters like paying bills and shopping on a routine basis. (ECF 11-4 at 15; ECF No. 11-8 at 16 ("dishes, laundry, feed animals, clean-up after animals, mow lawn, shovel snow, rake leaves").) The ALJ further noted that Shaw "has been engag[ed] in substantial work activity . . . demonstrating significant capacity for understanding and remembering workplace rules and processes as well as remembering to attend work on a routine basis." (ECF No. 11-4 at 15.) The ALJ thus concluded that "the record show[ed] that [Shaw] retain[ed] good mental functional capacity." (*Id.*)

The ALJ further relied on the opinion of Dr. Phillips, who also completed a PRT. In the PRT, Dr. Phillips found that Shaw had *mild* difficulty in understanding, remembering, or applying information and adapting or managing oneself. Dr. Phillips also opined that Shaw had moderate difficulty in interacting with others and in concentrating, persisting or maintaining pace. (ECF No. 11-5 at 27.) Dr. Phillips assessed Shaw similarly to Dr. Lefevre, but determined Shaw was moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (ECF No. 11-5 at 31.) Dr. Phillips' narratives noted that Shaw "ha[d] been stable with treatment" and despite his history of "irritability and racing thoughts" was currently "able to interact appropriately" and "adapt to his environment." (*Id.* at 32.) Dr. Phillips then concluded that "[d]espite his mental impairments, [Shaw] [was] able to persist at simple tasks over time under ordinary conditions." (*Id.*) The ALJ gave significant weight to Dr. Phillips' opinion and noted Shaw's sufficient mental functional capacity to perform activities of daily living and substantial work activity as previously noted. (ECF No. 11-4 at 15.)

### B. The ALJ Properly Accounted for Shaw's Moderate Limitations.

Shaw next challenges the ALJ's RFC as deficient because, he contends, the state agency psychologists on whom the AJL relied provided insufficient narrative findings to support their opinions. Shaw argues that because these narrative findings were flawed, the MRFCA findings, such as a moderate limitation in concentration, persistence, and pace (CPP), must be encapsulated into the RFC. (ECF No. 14 at 18.) Shaw cites the following decisions for this proposition: *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015); *Capman v. Colvin*, 617 F. App'x 575, 578-79 (7th Cir. 2015); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) and *Mischler v. Berryhill*, 766 F. App'x 369, 376 (7th Cir 2019).

While not without its ambiguities, Seventh Circuit law supports affirming the ALJ's decision here. Caselaw demonstrates the challenge courts have in addressing whether an ALJ has properly accounted for a claimant's moderate limitation in CPP, particularly where the underlying evidence involves check-the-box templates, such as an MFRCA. While more narrative detail in addition to checked boxes is certainly helpful, the Seventh Circuit has never held, as Shaw suggests, that the ALJ is *required* to use specific words to express a claimant's limitations in maintaining CPP. "We decline to provide a glossary of adjectives for use in RFC determination. What we do require—and our recent precedent makes plain—is that the ALJ must account for the totality of a claimant's limitations in determining the proper RFC." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). And, the Seventh Circuit has clarified that "a residual functional capacity determination, by definition, addresses what activities a claimant can sustain over the course of a work week." *Lockett v. Saul*, 834 F. App'x 236, 239 n.1; 20 C.F.R. §404.1545(b).

While Shaw cites *Varga*, the ALJ's decision in that case was reversed because the ALJ failed to include the claimant's significant difficulties concentrating in the RFC determination. The Seventh Circuit held that "an ALJ may rely on a doctor's narrative RFC rather than the checkboxes, where the narrative adequately encapsulates and translates those worksheet observations." *Varga*, 794 F.3d at 816. Unlike this case, in *Varga*, there was *no* narrative translation at all. *Id.* Without a narrative, the Court held the ALJ's hypothetical was required to incorporate any moderate difficulties in mental functioning found in Section I of the MRFCA. *Id.* Here, unlike *Varga*, both state agency psychologists provided narratives throughout their respective MRFCAs.

Shaw's citation of *Capman* similarly does not compel reversal or remand. In *Capman*, the Seventh Circuit deemed the ALJ to have permissibly relied on a consultant's opinion that the claimant, who was moderately limited in CPP, could adequately manage the stress of unskilled tasks. In fashioning the RFC, the ALJ restricted the claimant to simple, routine tasks and limited interactions with others. *Capman*, 617 F. App'x 575, 578 (7th Cir. 2015). The Court held that the ALJ's RFC findings adequately addressed the claimant's deficiencies in CPP and that the narrative adequately translated the moderate limitations in Section I of the MRFCA. *Capman*, 617 F. App'x at 578-79. Similar to *Capman*, the ALJ in this case limited Shaw to understanding, carrying out, and remembering no more than simple instructions and no production or pace work and thus accounted for Shaw's limitations in understanding, remembering, or applying information, as well as concentrating, persisting, or maintaining pace. (ECF No. 11-4 at 18.)

Shaw also cites *Mischler* and *DeCamp*. In *Mischler*, a state agency consultant concluded the claimant had moderate difficulties in maintaining CPP. The psychologist determined that the claimant was moderately limited in carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. *Mischler*, 766 F. App'x at 372. In her narrative, the psychologist noted that claimant had "adequate abilities to compete one-to-three step tasks, and that she could work "on a sustained basis . . . without occasional contact with others and occasional workplace changes. *Id.* The ALJ expressly adopted the psychologist's opinion and posed to the vocational expert a hypothetical claimant who was limited to light exertional work, "simple routine and repetitive tasks in a low stress job" defined as one with only occasional decision-making required, only occasional changes in the work setting, and no piecework or fast moving assembly line type work with only occasional interaction with coworkers. *Id.* at 373. The Seventh Circuit faulted the ALJ because the hypothetical failed to account for the "moderate" difficulties in concentration, persistence and pace identified by the state agency consultant. *Id.* at 374. The ALJ had presumed a narrative RFC that assessed the ability to complete one-to-three step tasks translated a checkbox limitation on concentration, persistence and pace. In *DeCamp*, the Seventh Circuit similarly reversed and remanded an ALJ's rejection because the ALJ did not adequately account for the limitations identified by the doctor in the check-box section of the forms

and in particular, failed to accommodate the claimant's limitations in CPP. *DeCamp*, 916 F.3d at 676.

While this case is facially similar to *Mischler*, the state agency psychologists here found Shaw moderately limited in various ways, including the ability to carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods, the narratives provided by the doctors are markedly different. Dr. Lefevre found Shaw capable of routine, unskilled work, and Dr. Phillips found Shaw able to persist at simple tasks over time under ordinary conditions. The ALJ did not "fully adopt" either opinion but gave significant weight to both and explained why. He further explained why Dr Lefevre's opinion regarding a moderate limitation in understanding, remembering, or applying information was not supported by the record. The ALJ also discussed medical evidence that showed Shaw retained "good mental functioning capacity." (ECF No. 11-4 at 15.)

The Acting Commissioner relies on *Pavlicek v. Saul* in which the Court of Appeals held that an ALJ had properly weighed medical opinion evidence where the narrative portion of the medical assessment was consistent with the moderate CPP checklist rating. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). The Seventh Circuit explained that the regulations define "moderate" as "fair" and "a moderate limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Id*. The state agency psychologist indicated a moderate limitation in areas relating to maintaining concentration and pace in the checklist portion of his completed form. *Id*. He elaborated in the narrative portion of the form, writing that the claimant "could perform at a consistent pace particularly if . . . engaged in [] simple, repetitive tasks." *Id.* (internal quotations omitted). This assessment was also consistent with other evidence in the record that the claimant could carry out simple instructions and make simple decisions with no significant limitations. *Id; see Urbanek v. Saul*, 796 F. App'x 910 (7th Cir. 2019) (finding the generic limitation, including limiting a claimant to simple tasks, may properly account for moderate limitation if they adequately account for the claimant's demonstrated psychological symptoms as found in the record)*; Pytlewski v. Saul*, 791 F. App'x 611, 615-16 (7th Cir. 2019) (holding that the state agency psychologists' narrative summaries that

the claimant could perform simple repetitive tasks were consistent with "moderately limited" in maintaining attention and concentration for extended periods).

Based on the totality of this caselaw, it is clear that a moderate limitation in CPP may be accommodated by limiting a plaintiff to simple, routine or repetitive tasks, if that determination is supported by logical evidence. In this case, the ALJ relied on two state agency psychologists who opined in their narratives that Shaw was capable of routine, unskilled work (Dr. Lefevre) and able to persist at simple tasks over time under ordinary circumstances" (Dr. Phillips). When a persuasive medical opinion accounts for a moderate limitation in CPP by restricting a claimant to routine, unskilled work or simple tasks there is nothing illogical about resolving such a moderate limitation by confining a claimant to work with simple instructions in a low-stress environment with no production rate or pace work and other restrictions, *See Goratowski v. Kijakzi*, No. 21-cv-1054-bhl, 2022 WL 11054083, at *2 (E.D. Wis. Oct. 19, 2022 (where the doctors assessed moderate limitations in CPP but elaborated that the claimant "would be able to sustain [concentration, persistence, and pace] of tasks that are simple and repetitive."). In fashioning the RFC, the ALJ relied on other medical evidence in the record and discussed his findings in detail. The ALJ's hypothetical went beyond a mere formulaic statement of "simple, repetitive, and routine tasks" and limited Shaw to understanding, carrying out, remembering no more than simple instructions, employment at a low-stress job, defined as having only occasional decision making and only occasional changes in the work setting, no production rate or pace work, and only occasion interaction with coworker and supervisors.

ALJs are responsible for assessing a claimant's RFC "based on all of the relevant medical evidence and other evidence." 20 C.F.R. §404.1545(a)(3), 404.1546(c); *see Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021) (emphasizing that an ALJ has the final responsibility for determining a claimant's RFC and is not required to adopt any doctor's particular opinion.) "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ reasonably weighed the conflicting opinion evidence and provided appropriate reasons for giving greater weight to some opinions and lesser weight to others. Particularly, the ALJ explained why he gave greater weight to the opinions of Drs. Lefevre and Phillips and lesser weight to other opinions such as those from Drs. Sarino, King, Haroldson and others. (ECF No. 11-4 at 12, 15-16.)

An ALJ is required to weigh conflicting evidence from medical experts and others and fashion an RFC that reaches a logical conclusion based on substantial evidence. Here, the ALJ completed a detailed analysis of the objective medical evidence, other medical opinions of record, treatment history, history of improvement, current stability, and Shaw's daily activities, including Shaw's current employment. The ALJ adopted a number of limitations to account for Shaw's mental impairments including limitations to only simple instructions, no production rate or pace work, only low stress jobs, and only occasional interaction with coworkers and supervisors and no interaction with the public. The ALJ's opinion was further bolstered by other cited medical evidence that demonstrated Shaw's sufficient mental functional capacity to perform substantial work activity as previously noted. The key question is whether the ALJ ignored evidence that would have reshaped the RFC analysis. There is nothing to suggest that any of the cited evidence or incidents require a more restrictive RFC than the ALJ already provided. Nor did the ALJ ignore any outcome determinative findings. Accordingly, this Court concludes the ALJ's decision met the "substantial evidence" standard and will not be disturbed. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Shaw argues that by adopting Dr. Lefevre's opinion the ALJ should have included "to some extent" limitations in working near others, maintaining pace, maintaining concentration and interacting with others. (ECF No. 14 at 12.) Shaw argues that the RFC limited him to "occasional interaction with co-workers and supervisors" (*id.*), implying that he should have been further limited. But Shaw does not point to any medical evidence supporting his assertion. (*See* ECF No. 11-5 at 16 (Douglas Chang, M.D. reported that Shaw "denied difficulty getting along with others")). Moreover, Shaw ignores that the ALJ provided numerous citations to Shaw's daily activities that supported the ALJ's conclusion that Shaw remained capable of occasional contact with supervisors and coworkers. Shaw was a member of a church and enjoyed movies, playing card games with friends and sitting around the firepit with friends. (ECF No. 11-4 at 13; ECF No. 11-5 at 15.) "[T]he ALJ [is] only required to incorporate limitations that he f[inds] supported by the evidence." *Alvarado v. Colvin*, 836 F.3d 744, 751 (7th Cir. 2016). The ALJ reasonably concluded that restrictions to occasional interaction with supervisors and coworkers and no contact with the public would account for Shaw's limitations.

Shaw also contends that the ALJ's RFC limitation on work pace was insufficient to account for a moderate limitation in pace. Shaw argues that the ALJ limited Shaw to no "fast-paced

production" but failed to provide a definition of that term. (ECF No. 14 at 12.) Shaw's argument misstates the RFC. The RFC assessment limited Shaw to work "where there is *no* production rate or pace work, to account for his limitations in . . . concentrating persisting, or maintaining pace. (ECF No. 11-4 at 10, 18) (emphasis added). The RFC did not contain the term "fast-paced;" and it specifically limited Shaw from performing any production rate or pace work. The ALJ noted that Shaw was limited to understanding, carrying out, and remembering no more than simple instructions, to account for his limitations in understanding, remembering, or applying information, as well as concentrating, persisting, or maintaining pace. (*Id.* at 18.)

Shaw's final criticism of Dr. Lefevre's opinion is that she failed to comply with POMS—the Policy Operations Manual System—by using the term "moderate" in the narrative. (ECF. No 14 at 14.) Even if Dr. Lefevre's opinion failed to comply with POMS, it would not warrant a remand. *See Flint v. Colvin*, 543 F. App'x 598, 600 (7th Cir. 2013) (POMS "is for the internal use of agency employees, has no legal force, and cannot bind the agency, let alone the district court."). Shaw's challenges to the ALJ's evaluation of Dr. Lefevre's are therefore unavailing.

### C. The ALJ's Evaluation of Other Medical Evidence, Including Shaw's Treating Physician, is Supported by Substantial Evidence.

Shaw also criticizes the ALJ for his handling of other medical opinions. (ECF No. 14 at 19-21.) He finds fault with the ALJ's decision to give limited weight to the opinion of Sandra King, Ph.D, who performed a mental consultative examination of Shaw in September 2017. (ECF. No. 11-4 at 12.) The record shows that at this examination, Shaw described his general mood as "good," reported that he was working part-time, and described his activities of daily living. Shaw told Dr. King that he did not like large crowds but was able to socialize in small groups. Dr. King reported that Shaw "plays cards with some friends, and sometimes friends come over and sit around the firepit." (ECF No. 11-10 at 46.) Dr. King further reported that Shaw was "mildly socially withdrawn" but "able to relate to [Dr. King] in an open manner." (*Id.*) Dr. King's Statement of Work Capacity concluded:

> Mr. Shaw is able to understand directions, but would more than likely have moderate difficulties remembering and carrying out instructions. He is predicted to have moderate difficulties in responding appropriately to supervisors and co-workers due to irritability/anxiety. His ability to maintain concentration and attention appears to be moderately impaired. He is expected to have moderate difficulties withstanding routine work stress and adapting to change, if they job is full-time. He is able to work part-time hours without becoming overly stressed.

(ECF No. 11-10 at 47)

The ALJ gave limited weight to this opinion because although Dr. King's opinions were generally consistent with the record overall in showing that Shaw had some mental symptoms and limitations, her "'moderate' limitations [were] generally [] vague and ill-defined." (ECF No. 11-4 at 12.) Dr. King opined that Shaw was "predicted to have moderate difficulties" and "appear[ed] to be moderately impaired" and was "expected to have moderate difficulties." (*Id.*)

Shaw contends that Dr. King's opinion limiting him to part-time work was not addressed. (ECF No. 14 at 20.) This contention fails because Dr. King did not opine that Shaw was limited to part-time work. Instead, she observed that Shaw was capable of part-time work without becoming overly stressed and that he would "be expected to have" moderate difficulties with work stress and adapting to change in a full-time job. (ECF No. 11-10 at 47.) The ALJ accounted for Dr. King's opinion by limiting Shaw to only low-stress jobs involving only occasional changes in the work setting. As for Shaw being restricted to part-time work, the ALJ addressed this restriction when addressing Dr. Sarah Haroldson's opinion that Shaw be limited to working 25 hours or less per week. (ECF No. 11-10 at 96.) The ALJ gave this opinion little weight because the doctor "provided no explanation at all as to why the claimant was restricted to parttime work." (ECF No. 11-4 at 15.)

Shaw also complains about the ALJ's decision to give little weight to another treating physician, Dr. Wilbur Sarino. (ECF No. 14 at 19-20.) Shaw argues the ALJ improperly discounted Dr. Sarino's opinions after concluding Dr. Sarino failed to "provid[e] any adequate explanation [for the significant] limitations, apart from generally completing checkboxes or checklists on each page." (ECF No. 11-4 at 16.) The ALJ noted that Dr. Sarino's own treatment notes were inconsistent with such limitations. For example, on March 30, 2018, Dr. Sarino reported that Shaw's mood was good, and he was working at the Family Dollar Store, a job he enjoyed. (ECF No. 11-18 at 86.) On June 28, 2018, Dr. Sarino reported that Shaw was feeling nervous and paranoid and that he was living with his 19-year old son, which was causing arguments. (*Id.* at 83.) On August 31, 2018, Dr. Sarino reported that Shaw was working 30 hours a week at a restaurant, his mood was good, and his grooming and hygiene fair. (*Id.* at 82.) On February 1, 2019, Dr. Sarino reported that Shaw's mood was good, his grooming and hygiene were good and he planned to run a marathon. (*Id.* at 81.) On April 26, 2019, Dr. Sarino reported that Shaw had

good grooming and hygiene, his new medication helped him sleep but his mood was upset as he was observed arguing with this wife. (*Id.* at 79.) Given such unremarkable treatment notes, the ALJ's discounting of Dr. Sarino's marked limitations was a reasonable assessment. If the ALJ determines a treating physician's opinion is not well-supported and is inconsistent with the record, the ALJ may reject it. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("[I]f the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it."); *Hall ex rel. Hall v. Astrue*, 489 F. App'x 956, 958 (7th Cir. 2012) (affirming ALJ's decision to give greater weight to non-examining state agency physicians' opinion than that of consultative examiner, because the examiner's opinion was less consistent with the medical evident). The ALJ further evaluated treatment notes from Ascension Medical Group where Shaw reported his anxiety symptoms were stable; denied panic, agoraphobia and social phobia; and indicated his medication was effective with no side effects. (ECF No. 11-18 at 30). In February 2019, Shaw's depressive disorder, anxiety and schizophrenia were stable. (*Id.* at 11.)

The ALJ's decision to give greater weight to the state-agency doctors' opinions than to that of Shaw's treating physician is supported by substantial evidence. Shaw has failed to show that no reasonable mind could accept the ALJ's conclusion, and the Court must therefore affirm the ALJ's decision. *See Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) ("Grotts wants us to weigh Dr. Cremerius's opinion ourselves, but this would be no less than substituting our judgment for that of the ALJ's, an impermissible step."); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) ("We do not reweigh the evidence or substitute our own judgment for that of the ALJ.").

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Shaw's motion, seeking reversal of the defendant's decision which found Shaw to be not disabled after May 16, 2016 (ECF No. 14) is **DENIED**;

**IT IS FURTHER ORDERED** that Shaw's motion seeking a remand of the case (ECF No. 14) is **DENIED**.

This case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly. Dated at Milwaukee, Wisconsin on December 12, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge